UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL CHARLES BEIDLEMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CITY OF MODESTO,

Defendant.

No. 1:16-cv-01100-DAD-SKO

<u>ORDER APPROVING SETTLEMENT AGREEMENT AND DISMISSING CASE</u>

(Doc. Nos. 53, 56)

This is an action brought by plaintiff Michael Charles Beidleman ("plaintiff"), individually and on behalf of all others similarly situated, against defendant City of Modesto ("defendant"). In his complaint, plaintiff alleges that he and the putative class members were denied proper compensation in violation of the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., when defendant failed to include all statutorily required forms of compensation in the regular rate of pay used to calculate plaintiffs' overtime compensation. (Doc. No. 1 at 1.)

**BACKGROUND**

On July 28, 2016, plaintiff commenced this action alleging violations of the FLSA, based on defendant's use of an illegal compensation computation method, which under-calculated plaintiffs' regular rate of pay and resulted in under-payment with respect to overtime hours. (*Id.*)

1

From September 9, 2016 to March 7, 2017, twenty-one individuals filed affidavits with the court giving written notice of their consent to join this FLSA class action as plaintiffs. (Doc. Nos. 4–14, 16–20, 24, 30, 33, 37–38.) On February 16, 2017, plaintiff moved to conditionally certify a class of "similarly situated" potential opt-in plaintiffs, who "are or were employed by Defendant in the job classifications of fire captain, fire engineer, firefighter and firefighter trainee who have worked overtime and received cash payments in lieu of health care benefits within the same pay period at any time since July 28, 2013 to the present." (Doc. No. 34-1 at 2.) The court granted conditional certification of this class on March 30, 2017. (Doc. No. 44.) Additionally, the court adopted the parties' stipulation setting a settlement conference for May 23, 2017 before U.S. Magistrate Judge Stanley A. Boone and tolling plaintiffs' claims through the date of that settlement conference. (Doc. Nos. 43, 44.)

On May 23, 2017, with Magistrate Judge Boone presiding over the settlement conference, the parties reached an agreement and were directed to file dispositional documents and settlement agreement for court approval. (Doc. No. 48.) On August 22, 2017, the parties filed a stipulation and proposed order for approval of the settlement agreement and dismissal with prejudice. (Doc. No. 53.) On October 26, 2017, the court issued an order deferring consideration of the parties' stipulation and directing them to supplement it with information addressing the fairness, adequacy, and reasonableness of the settlement. (Doc. No. 55.) On November 16, 2017, the parties filed a memorandum in support of their previously submitted stipulation and proposed order. (Doc. No. 56.) On March 2, 2018, the court held a hearing to allow counsel for the parties to address the court's remaining questions with regard to the proposed settlement. (Doc. No. 60.)

**LEGAL STANDARD**

Settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best*

*Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4

(D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), *recommendations adopted*, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

**DISCUSSION**

**A.      Bona Fide Disputes**

Under *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), the payment of cash in lieu of health insurance benefits must be included in the calculation of the regular rate of pay for overtime payments under the FLSA. There appears to be no dispute that defendant is liable for overtime payments under *Flores*. However, this case involves legitimate questions about the extent of the defendant's FLSA liability. These questions constitute bona fide disputes. *See Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted).

Here, the parties indicate that there are at least three such bona fide disputes. First, the parties disagree about how to calculate overtime compensation and state that the evidence and applicable law on this issue is both complicated and conflicting. (Doc. No. 56 at 12.) Second, due to uncertainty in the law prior to the Ninth Circuit's decision in *Flores*, it is unclear whether defendant acted in good faith when it failed to include cash in lieu of health insurance benefits in its calculation of overtime compensation or if defendant would be subject to liquidated damages. *See Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL 2455419, at 13-14 (E.D. Cal. May 22, 2015) (finding that failure to include a health benefit reimbursement amount in calculating the regular rate of pay was done in good faith due to uncertainty in the law). Finally,

4

the parties dispute the applicable statute of limitations. Under the FLSA, the statute of limitations is two years, which may be extended to three years if the violation is found to be willful. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988). Although defendants concede liability under the FLSA, they dispute whether the FLSA violation at issue in this case was willful. All of these issues impact the extent of defendant's FLSA liability in this case. Based on the aspects of the action discussed above, the court is satisfied that there are bona fide disputes at issue here.

**B.    The Proposed Settlement Agreement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3; *Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017). The court addresses each of these factors below.

        1.    <u>Plaintiffs' Range of Possible Recovery</u>

The parties state that they "calculated the FLSA liability based upon payroll record data, reflecting varying amounts of overtime that was paid over a recovery period of just over three years." (Doc. No. 56 at 13.) Under the terms of the settlement agreement, defendant will pay a gross amount of $100,085.58 to plaintiffs and putative plaintiffs, which reflects the parties' best reasonable belief of a fair settlement value, based on the variables at play in this action. (*Id.*) The gross amount in the common fund accounts for back overtime pay and liquidated damages. (*Id.*) The parties then used a formula to allocate the settlement amount in proportion to the total number of overtime hours paid to each individual over the statute of limitations period. (*Id.*)

5

Though the decision in *Flores* strongly suggests that defendants would be liable on plaintiffs' FLSA cause of action, several variables, including the issues discussed above as bona fide disputes, impact the certainty of calculating damages in this case. Another complicating factor here is the possibility of a reduction in damages based upon what defendant considered as overtime hours, which was used to calculate back wages and liquidated damages. Defendant paid out overtime based on the hours in paid status, which included sick and vacation hours, rather than the number of hours that employees worked. This may result in a more favorable measure than required by the FLSA, meaning that if this case were to proceed to trial, defendant could assert these offsets and credits to reduce plaintiffs' recovery.

The parties state that the gross amount of settlement is a fair valuation of the damages if neither plaintiffs nor defendant were to prevail on all issues in dispute. At the hearing before the undersigned on March 2, 2018, the parties indicated that plaintiffs' initial settlement demand was for $179,000, which plaintiffs' counsel recognized was an overstatement of the actual damages. In light of the complexity of this case and the difficulty the parties face in estimating the likely value of plaintiffs' claim without conducting an exact calculation, the court finds the rationale underlying the agreement and the recovery obtained as a result to be reasonable. This factor weighs in favor of approval of the FLSA settlement.

2. The Stage of the Proceedings and the Amount of Discovery Completed

The court is also to evaluate the stage of the proceedings and the amount of discovery completed in order to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement. The Ninth Circuit's decision in *Flores* makes it likely that plaintiffs would prevail in some aspect of their claim. The parties engaged in informal discovery that involved the exchange of payroll data to evaluate the potential range of recovery. (Doc. No. 56 at 15.) Plaintiff retained an expert to review payroll data and perform back pay calculations, and also consulted with city

6

payroll staff. (*Id.*) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate early-stage settlement.

### 3. The Seriousness of the Litigation Risks Faced by the Parties

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Here, the named plaintiff believes his claims are meritorious but concedes that if this case were to proceed to trial, he would face uncertainties about how to calculate damages due to the bona fide disputes in the case. Additionally, at trial defendant could assert offsets and credits from the way that it calculated overtime, which was more favorable than required by the FLSA, thus reducing plaintiffs' recovery. All of these concerns pose a risk to plaintiffs and could decrease their overall recovery. Further, the parties state that the calculation of precise FLSA overtime credits would be "extremely time consuming and costly" and that "[f]orgoing an in-depth calculation of offsets and credits benefits all of the individuals covered by the proposed settlement agreement." (Doc. No. 56 at 14.) Accordingly, this factor weighs in favor of approval of the FLSA settlement.

### 4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants*); Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-

action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case).

Here, the release provision is limited to claims "against the released parties arising in, or in connection with, or out of the litigation described above and any such claim arising in, or in connection with, or out of the claims described above…." (Doc. No. 53-1 at 5.) The parties agreed at the most recent hearing that the "Released Claims" as indicated in the Settlement Agreement refers to the FLSA claims for plaintiffs and putative plaintiffs who received cash-in-lieu of health benefit payments at any time since July 28, 2013. In light of this understanding, consideration of this factor weighs in favor of approval of the FLSA settlement.

### 5. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11–cv–05188–WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiffs' counsel, attorney David Mastagni, has considerable experience in litigating and settling cases asserting liability pursuant to the *Flores* decision and has stated that this settlement is fair, adequate, and in the best interests of the class members. (Doc. No. 56 at 16.) Further, in addition to Michael Beidleman, the lead plaintiff, all twenty-one of the opt-in plaintiffs have already signed the settlement agreement and represent over forty percent of the total collective action class. (Doc. No. 53-1 at 10–33.) Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

### 6. The Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." *Slezak*, 2017 WL 2688224, at *5. Here, the court finds that there is a low probability of fraud or collusion because the settlement negotiations were presided over and facilitated by a magistrate judge of this court. *See id*. Further, the parties took a reasonable approach by using payroll record data to calculate the common fund to provide back overtime pay and liquidated damages and then developed a formula to administer the total value of the settlement for plaintiffs and putative plaintiffs. (Doc.

8

No. 56 at 13–15.) Given the transaction cost of developing exact calculations of total liability, this was a reasonable approach in estimating damages. There is absolutely nothing on the face of the record to suggest plaintiff's counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). This settlement also lacks any evidence of more "subtle signs" of collusion, such as "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.*

Upon considering the totality of the circumstances, the court finds that the proposed settlement is a fair and reasonable resolution of the parties' bona fide disputes.

## C. Attorneys' Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F.Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a

way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD–Rental*, 779 F.3d at 955.

According to the terms of this settlement, plaintiffs' counsel will be paid $43,414.92 in attorneys' fees and costs, and plaintiffs and putative plaintiffs who execute the signed release will receive an aggregate amount not to exceed $100,085.08. (Doc. No. 56 at 8.) Attorneys' fees and costs represent approximately thirty percent of the maximum settlement amount, which is somewhat above the benchmark award but not inconsistent with awards allowed in similar cases. *See Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs award of $52,069 in a settlement of a FLSA collective action, which was thirty-one percent of the total settlement amount); *Selk*, 159 F. Supp. 3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of a FLSA collective action, which was forty-four percent of the total settlement amount); *Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *7 (E.D. Cal. Feb. 23, 2018) (approving attorneys' fees of $75,000 in a settlement of a class action and FLSA collective action, which was thirty percent of the total settlement amount).

The court turns to the lodestar amount in order to cross-check whether a thirty percent award of attorneys' fees is appropriate. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). The court typically applies a lodestar multiplier after multiplying a reasonable hourly rate by the number of hours worked. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier

10

of 1.9 is comparable to multipliers used by the courts").

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Fresno Division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong–Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 839–40 (E.D. Cal. 2016) (concluding that Fresno Division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14–cv–00964–MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years of experience); *Rosales v. El Rancho Farms*, No. 1:09–cv–00707–AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Since these rates are only for the purposes of generally cross-checking the reasonableness of an award of one-third of the common fund as attorneys' fees, the court finds that the rates requested by plaintiffs' counsel here are sufficient for this purpose and will employ those rates in calculating the lodestar. According to the affidavit of attorney Mastagni (Doc. No. 56-1 at 6–7),

the lodestar should be calculated in the following manner:

| Name | Title | Rate | Hours | Total |
|---|---|---|---|---|
| David Mastagni | Partner | 400 | 67.5 | $27,000.00 |
| Isaac Stevens | Senior Associate | 325 | 22.5 | $7,312.50 |
| Ace Tate | Associate | 225 | 123.8 | $27,855.00 |
| Carl Larson | Associate | 225 | 2.6 | $585.00 |
| Ian Sangster | Associate | 225 | 0.1 | $22.50 |
| Andy Horwitt | Forensic Accountant | 300 | 1 | $300.00 |
| Michael Lee | Forensic Accountant | 300 | 41.09 | $12,327.00 |
| Patrick Barbieri | Paralegal | 100 | 8.2 | $820.00 |
| Todd Thomas | Paralegal | 100 | 1.17 | $117.00 |
| | | | | **$76,339.00** |

The evidence submitted is also sufficient to establish the number of attorney hours expended on this litigation. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting ... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C–11–00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)).

Accordingly, the court finds that the lodestar amount for cross-check purposes is $76,339.00. This equates to a lodestar multiplier of approximately 0.57. As a negative modifier, this supports the award of $43,414.92 of attorneys' fees in this case. Therefore, considering the lodestar cross-check, the court approves the award of $43,414.92 in attorneys' fees, equal to approximately thirty percent of the total maximum settlement amount.

## CONCLUSION

For the forgoing reasons:

1. The parties' settlement agreement, which is incorporated herein by reference, is approved as fair, reasonable and just in all respects and the parties shall perform the settlement agreement in accordance with its terms;

/////

2. The court retains jurisdiction over this action for purposes of enforcing the settlement agreement;

3. This action is hereby dismissed with prejudice; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **March 12, 2018**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE